SCOTT C. WILLIAMS (6687)
43 East 400 South
Salt Lake City, Utah 84111
Telephone: (801) 220-0700
Facsimile: (801) 364-3232
Email: scwlegal@gmail.com
Attorney for Defendant John Swallow

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **FEDERAL ELECTION COMMISION,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**JEREMY JOHNSON AND JOHN SWALLOW,**<br><br>**Defendants.** | Case No. 2:15-cv-00439-DB<br><br>**DEFENDANT JOHN SWALLOW'S ANSWER TO AMENDED COMPLAINT**<br><br>Hon. Dee Benson |

Defendant John Swallow ("**Defendant**") by and through his attorney, Scott C.

Williams, answers the Amended Complaint of Plaintiff Federal Election Commission,

("**Plaintiff**" or "**Commission**"), as follows:

## INTRODUCTION

## COMPLAINT ¶1:

During the 2009-2010 campaign cycle for federal elections, Utah businessman Jeremy

Johnson knowingly and willfully made campaign contributions that violated the Federal

Election Campaign Act ("**FECA**" or "**Act**") because they exceeded applicable limits and were

made in the names of other persons, and former Utah Attorney General John Swallow

knowingly and willfully violated FECA by making contributions in the name of another when

he caused, helped, and assisted Johnson to advance or reimburse the contributions of straw

donors to a candidate for United States Senate.

**ANSWER:**

Defendant lacks sufficient knowledge, information or belief to respond to the

allegations against Jeremy Johnson in Paragraph 1 and on that basis denies the same.  Relative

to Paragraph 1, Defendant admits only that he is the former Utah Attorney General and denies

all other allegations contained therein.

**COMPLAINT ¶2:**

In 2009 and 2010, FECA provided that no person could contribute in excess of

$2,400 per election to any federal candidate. During that time, however, Johnson contributed

approximately $100,000 to Mark Shurtleff's United States Senate campaign, about $50,000 to

Mike Lee's Senate campaign, and about $20,000 to then-Senate Majority Leader Harry Reid's

Senate campaign.   Johnson contributed at least a substantial part of these unlawful amounts

with the hope that doing so would help protect Johnson's business interests from federal

prosecution.

**ANSWER:**

Paragraph 2 contains conclusions of law or mixed conclusions of law and fact to which

no response is required.  To the extent a response is required, Defendant lacks sufficient

information to form a belief regarding the remaining allegations concerning Jeremy Johnson

and on that basis denies the same.

**COMPLAINT ¶3:**

To contribute these excessive amounts, Johnson unlawfully used "straw donors"— that is, contributors who gave funds ostensibly in their own names to the candidates but with the understanding that Johnson would either advance them the funds or reimburse them after the contributions were made. Johnson advanced or reimbursed approximately $170,000 to the straw donors he recruited, who in turn gave funds to the Shurtleff, Lee, and Reid campaigns.

**ANSWER:**

Defendant lacks sufficient information to form a belief regarding the allegations concerning Jeremy Johnson and on that basis denies the same.

**COMPLAINT ¶4:**

Johnson contributed to the Shurtleff and Lee campaigns at Swallow's behest.  Swallow solicited a large contribution from Johnson to Shurtleff's campaign, and Swallow  instructed Johnson to make the contribution by giving money to others for them to contribute in  their own names.  After Shurtleff ended his campaign, Swallow solicited another large contribution from Johnson, this time to Lee's campaign, and directed Johnson to follow the same procedures that he used to contribute to Shurtleff's campaign.

**ANSWER:**

Defendant admits he assisted as a volunteer fundraiser in the Shurtleff Attorney General Campaign, the Shurtleff Senate Campaign, and the Lee Senate Campaign.  Defendant admits that as a fundraiser in these campaigns, he interacted with Johnson.  Defendant denies he ever instructed, intimated, directed or told Johnson to make contributions by giving money to others for them to contribute in their own names to any campaign.

**COMPLAINT ¶5:**

As to Johnson's contribution to Lee's campaign, Swallow not only initiated the scheme, he also alerted Johnson that certain straw donors' contribution checks had bounced, in order to effect the scheme. Swallow caused, helped, and assisted Johnson to advance or reimburse approximately $50,000 in contributions through straw donors to Lee's campaign.

**ANSWER:**

Defendant admits only that he was notified by the Mike Lee campaign that four checks purportedly delivered by Jeremy Johnson to the Mike Lee campaign had been rejected by the bank, and Defendant passed that information to Jeremy Johnson in an email dated June 21, 2010, and denies all other allegations of Paragraph 5.

**COMPLAINT ¶6:**

To remedy these violations, the Commission seeks a declaration that Johnson violated FECA's limit on the amount a person may contribute per election to a federal candidate, *see* 52 U.S.C. § 30116(a)(1)(A), and that Johnson and Swallow both violated FECA's prohibition on any person contributing to a federal candidate in the name of another person, *see* 52 U.S.C. § 30122. The FEC also requests that the Court assess appropriate civil penalties against Johnson and Swallow, permanently enjoin Johnson and Swallow from committing future similar violations, and impose any other appropriate relief.

**ANSWER:**

Paragraph 6 contains conclusions of law or mixed conclusions of law and fact and is a request for relief, to which no response is required. To the extent a response is required, Defendant denies the allegations of Paragraph 6.

## JURISDICTION AND VENUE

**COMPLAINT ¶7:**

This action seeks civil penalties, a declaratory judgment, a permanent injunction, and other appropriate relief as authorized by the Federal Election Campaign Act, 52 U.S.C. §§ 30101-46 (formerly 2 U.S.C. §§ 431-57).

**ANSWER:**

Paragraph 7 contains conclusions of law or mixed conclusions of law and fact and is a request for relief to which no response is required. To the extent a response is required, Defendant admits only that Plaintiff purports to seek relief pursuant to the cited statutes.

**COMPLAINT ¶8:**

This Court has jurisdiction over this suit pursuant to 28 U.S.C. § 1345, since it is an action brought by an agency of the United States expressly authorized to sue by an act of Congress. *See* 52 U.S.C. §§ 30107(a)(6), 30109(a)(6).

**ANSWER:**

Paragraph 8 contains conclusions of law or mixed conclusions of law and fact to which no response is required. To the extent a response is required, Defendant admits that Plaintiff purports to invoke the jurisdiction of this Court pursuant to the cited statutes.

**COMPLAINT ¶9:**

Venue is properly found in the United States District Court for the District of Utah pursuant to 28 U.S.C. § 1391(b) and 52 U.S.C. § 30109(a)(6)(A), because Johnson and Swallow are found, reside, and transact business in this District and because a substantial part of the acts or omissions giving rise to this suit occurred in this District.

**ANSWER:**

Paragraph 9 contains conclusions of law or mixed conclusions of law and fact to which no response is required.  To the extent a response is required, Defendant admits only that he resides in this District, denies engaging in any unlawful conduct and denies any remaining allegations contained in  Paragraph 9 of the Complaint.

### THE PARTIES

**COMPLAINT ¶10:**

Plaintiff FEC is the independent agency of the United States government with exclusive jurisdiction over the administration, interpretation, and civil enforcement of FECA. See 52 U.S.C. §§ 30106(b)(1), 30107(a), 30109.  The Commission is authorized to investigate possible violations of the Act, id. § 30109(a)(1)-(2), and to file civil lawsuits in the United States district courts to enforce the Act, id. §§ 30107(e), 30109(a)(6).

ANSWER:

Paragraph 10 contains conclusions of law or mixed conclusions of law and fact to which no response is required.  To the extent a response is required, Defendant admits that the above-cited statutes speak for themselves and denies all other allegations of Paragraph 10.

**COMPLAINT ¶11:**

Defendant Jeremy Johnson is a Utah resident who has conducted business in Utah.  At all times relevant to this case, Johnson has owned or effectively controlled a company named Triple 7, an internet-marketing company named I Works, Inc. ("I Works"), and other businesses that processed transactions for online-poker companies.

<u>ANSWER:</u>

Defendant is without sufficient information to conclusively respond to the allegations and on that basis denies the same.

**<u>COMPLAINT ¶12:</u>**

Defendant John Swallow is a Utah resident and a member of the Utah State Bar. In 2002 and 2004, Swallow unsuccessfully ran for United States Congress in Utah's 2nd Congressional District.  In December 2009, Utah Attorney General Mark Shurtleff appointed Swallow to serve as chief deputy attorney general.  Swallow served as a fundraising adviser for Shurtleff's 2008 Utah attorney general and 2009 United States Senate campaigns. Swallow also engaged in fundraising efforts for Mike Lee's 2010 United States Senate campaign. In November 2012, Swallow was elected Attorney General of Utah. He served from January 2013 until his resignation in December 2013.

<u>ANSWER:</u>

Defendant admits that he is a member of the Utah State Bar, that he was the Republican nominee for United States Congress in Utah's Second Congressional District in 2002 and 2004, that he was appointed in December, 2009 by the Attorney General to serve as Chief Deputy over the Utah Attorney General's Office Civil Divisions, that he was involved as a volunteer fundraiser for Mark Shurtleff in 2008 and 2009, involved in raising funds both for state office accounts and federal office accounts, that he was involved as a volunteer fundraiser assisting United States Senate candidate Mike Lee in 2010 and that he was elected as Utah's 20th Attorney General in November 2012 where he served from January 7, 2013 until his retirement on or about December 3, 2013 and denies all other allegations of Paragraph 12.

**COMPLAINT ¶13:**

During the 2009-2010 election cycle, FECA prohibited any person from contributing in excess of $2,400 per election to any candidate for federal office and his or her authorized political committees. 52 U.S.C. § 30116(a)(1)(A) (formerly 2 U.S.C. § 441a(a)(1)(A)); Price Index Increases for Contribution and Expenditure Limitations, 74 Fed. Reg. 7435-02, 7437 (Feb. 17, 2009).

**ANSWER:**

Paragraph 13 contains statements and citations to law and/or conclusions of law to which no response is required. To the extent a response is required, Defendant states that the above-cited laws speak for themselves and denies all other allegations of Paragraph 13.

**COMPLAINT ¶14:**

The Act further provides that "[n]o person shall make a contribution in the name of another person." 52 U.S.C. § 30122 (formerly 2 U.S.C. § 441f). Additionally, no person may "[k]nowingly help or assist" any person contribute in the name of another. 11 C.F.R. § 110.4(b)(1)(iii) (2010). A person has knowingly helped or assisted a person to contribute in the name of another when he or she has "initiate[d] or instigate[d] or ha[d] some significant participation in a plan or scheme to make a contribution in the name of another." Prohibited Contributions, 54 Fed. Reg. 34,098, 34,105 (Aug. 17, 1989) (Explanation and Justification for 11 C.F.R. § 110.4).

**ANSWER:**

Paragraph 14 contains statements and citations to law and/or conclusions of law to which no response is required. To the extent a response is required, Defendant states that the above-cited Statute speaks for itself. Defendant further states that the above-cited federal

regulations, to the extent legally adopted, likewise speak for themselves and denies all other allegations of Paragraph 14.

**COMPLAINT ¶15:**

The Act authorizes a United States district court to order a defendant who has knowingly and willfully contributed excessive amounts to a federal candidate in violation of 52 U.S.C. § 30116(a) to pay a civil penalty.  That civil penalty may not exceed the greater of $16,000 or 200% of the contributions involved in the violation.  *See* 52 U.S.C. § 30109(a)(6)(C); 11 C.F.R. § 111.24(a)(2)(i) (2010).

**ANSWER:**

Paragraph 15 contains statements and citations to law and/or conclusions of law to which no response is required.  To the extent a response is required, the above statutes and rules speak for themselves and Defendant denies all other allegations of Paragraph 15.

**COMPLAINT ¶16:**

The Act authorizes a United States district court to order a defendant who has knowingly and willfully made contributions in the name of another in violation of 52 U.S.C. § 30122 to pay a civil penalty.  That civil penalty may not be less than 300% of the contributions involved in the violation and may not be more than the greater of $60,000 or 1,000% of the contributions involved in the violation.  52 U.S.C. § 30109(a)(6)(C); 11 C.F.R. § 111.24(a)(2)(ii)(2010).

**ANSWER:**

Paragraph 16 contains statements and citations to law and/or conclusions of law to which no response is required.  To the extent a response is required, the above statutes and rules speak for themselves and Defendant denies all other allegations of Paragraph 16.

**COMPLAINT ¶17:**

For a defendant who has violated FECA, but has not done so knowingly and willfully, the Act authorizes a United States district court to order that defendant to pay a civil penalty that does not exceed the greater of $7,500 or an amount equal to any contribution involved in the violation.  52 U.S.C. § 30109(a)(6)(B); 11 C.F.R. § 111.24(a)(1) (2010).

**ANSWER:**

Paragraph 17 contains statements and citations to law and/or conclusions of law to which no response is required.  To the extent a response is required, the above statutes and rules speak for themselves and Defendant denies all other allegations of Paragraph 17.

**COMPLAINT ¶18:**

In addition to imposing civil penalties, FECA authorizes a United States district court to "grant a permanent or temporary injunction, restraining order, or other order" against any defendant who has violated the Act.  52 U.S.C. § 30109(a)(6)(B).

**ANSWER:**

Paragraph 18 contains statements and citations to law and/or conclusions of law to which no response is required.  To the extent a response is required, the above statutes and rules speak for themselves and Defendant denies all other allegations of Paragraph 18.

## FACTUAL BACKGROUND

**COMPLAINT ¶19:**

During the 2009-2010 election cycle, Johnson knowingly and willfully used straw donors to contribute amounts in excess of FECA's limits to three candidates for United States Senate at least in part in an attempt to further and protect his business interests, and Swallow knowingly and willfully violated FECA by making contributions in the names of another when

he caused, helped, and assisted Johnson to advance or reimburse the campaign contributions of straw donors to a candidate for United States Senate.

**ANSWER:**

Defendant lacks information sufficient to form a belief as to what Jeremy Johnson did or did not do and why he did or did not do the things alleged against him in Paragraph 19 and on that basis Defendant denies the same.   As to the allegations made against Defendant, Defendant denies having engaged in any unlawful activity, or assisting any other person, including Jeremy Johnson, to engage in any unlawful activity, and specifically denies having "violated FECA by making contributions in the names of another" or that "he caused, helped, and assisted Johnson to advance or reimburse the campaign contributions of  straw donors to a candidate for United States Senate" and denies all other allegations asserted against him in Paragraph 19.

**COMPLAINT ¶20:**

In 2009, Johnson used the names of others to contribute approximately $100,000 to Mark Shurtleff, who was then the Attorney General of Utah and a candidate in the June 2010 Republican primary election for United States Senate in Utah.  Swallow solicited Johnson to contribute in this way and instructed Johnson on how to do so without running afoul of FECA's limits.

**ANSWER:**

Defendant lacks information sufficient to form a belief as to what Jeremy Johnson did or did not do and why he did or did not do the things alleged against him in Paragraph 20 and on that basis Defendant denies the same.   As to the allegations made against Defendant, Defendant denies having engaged in any unlawful activity and denies all other allegations of Paragraph 20.

**COMPLAINT ¶21:**

In 2009, Swallow solicited Johnson to make a large contribution to Shurtleff's 2009 U.S. Senate campaign. Johnson offered to write a check for Shurtleff's campaign in an amount in excess of FECA's limits. Swallow told Johnson, however, about the statutory limit to the amount that any one person could legally contribute to a federal candidate.

**ANSWER:**

Defendant lacks sufficient information to form a belief regarding the content of conversations that he had with Jeremy Johnson on the subject of campaign contributions, but denies that he ever suggested other than Jeremy Johnson follow the laws that apply to campaign fundraising. Defendant denies all allegations in Paragraph 21 not admitted herein.

**COMPLAINT ¶22:**

Swallow and Johnson then discussed the possibility of illicitly contributing additional amounts to Shurtleff's campaign by giving the funds to straw donors and arranging for those straw donors to pass on the funds to the Shurtleff campaign. Swallow also e-mailed Johnson to tell him to make contributions by giving money to other people for them to contribute.

**ANSWER:**

Defendant denies the allegations of Paragraph 22.

**COMPLAINT ¶23:**

Johnson entered into arrangements or understandings with his straw donors that they would contribute funds to Shurtleff's campaign and that Johnson would supply them with the funds for those contributions.

**ANSWER:**

Defendant lacks information sufficient to form a belief regarding the allegations of Paragraph 23 and on that basis denies the same.

**COMPLAINT ¶24:**

Johnson's straw donors transmitted funds to Shurtleff's campaign that collectively amounted to approximately $100,000. Johnson supplied his straw donors with those funds by either advancing them the money for the donations they would make to Shurtleff's campaign, or reimbursing them for the donations they had already made to Shurtleff's campaign.

**ANSWER:**

Defendant lacks information sufficient to form a belief regarding the allegations of Paragraph 24 and on that basis denies the same.

**COMPLAINT ¶25:**

Johnson made the contributions described in paragraphs 20-24 for the purpose of influencing the 2010 Republican primary election for United States Senate in Utah or the 2010 general election for United States Senate in Utah.

**ANSWER:**

Defendant lacks information sufficient to form a belief regarding the allegations of Paragraph 25 and on that basis denies the same.

**COMPLAINT ¶26:**

Johnson made the contributions described in paragraphs 20-24 voluntarily and with an awareness that they were unlawful.

**ANSWER:**

Defendant lacks information sufficient to form a belief regarding the allegations of Paragraph 26 and on that basis denies the same.

**COMPLAINT ¶27:**

In 2010, Johnson used the names of others to contribute approximately $50,000 to Mike Lee, who was then a candidate in the June 2010 Republican primary election for United States Senate in Utah, and who, after winning that election, became a candidate in the November 2010 general election for United States Senate in Utah. Swallow solicited Johnson to reimburse contributions to the Lee campaign and promised Johnson that funding the contributions would help protect Johnson's business interests from federal prosecution.

**ANSWER:**

Defendant lacks information sufficient to form a belief regarding the allegations of Paragraph 27 relative to Jeremy Johnson and on that basis denies the same. Defendant admits that Mike Lee was a candidate for the United States Senate and was on the Republican Primary ballot in June, 2010 and thereafter became a candidate in the November, 2010 general election for United States Senate in Utah and Defendant denies all other allegations of Paragraph 27.

**COMPLAINT ¶28:**

During the time relevant to this case, Johnson's business interests included companies that made tens of millions of dollars by processing financial transactions for online-poker companies. Also during the time relevant to this case, Johnson was aware that the United States Attorney's Office in the Southern District of New York had been filing lawsuits to seize the assets of online-poker companies, including those like Johnson's companies that processed financial transactions relating to online poker games.

**ANSWER:**

Defendant lacks information sufficient to form a belief regarding the specific nature of

Jeremy Johnson's business interests, the revenue and or profitability of any such companies,

the activities of the United States Attorney's Office in the Southern District of New York, or

Jeremy Johnson's knowledge or state of awareness of such federal agency activities which are

asserted as the allegations of Paragraph 28, and on that basis denies the same.

**COMPLAINT ¶29:**

In November 2009, Shurtleff ended his campaign, and in January 2010, Lee entered the

race for the Republican nomination for Senate in Utah, with Shurtleff's endorsement.  Swallow

engaged in fundraising efforts for Lee's campaign and solicited Johnson to make a large

contribution to the campaign.  When Swallow asked Johnson to contribute to Lee's campaign,

Johnson asked Swallow whether he could write a large check to the Lee campaign or if the

limits applicable to Shurtleff's campaign also applied.  Swallow confirmed to Johnson that the

same rules applied.

**ANSWER:**

Defendant lacks sufficient information to form a belief regarding when Mark Shurtleff

ended his exploratory testing the waters activity relative to the Utah United States Senate seat

for the November 2010 election as well as when Mike Lee "entered the race."  Defendant

admits that at some point Mark Shurtleff endorsed the candidacy of Mike Lee for United States

Senate.  Defendant denies all allegations in Paragraph 29 not admitted herein.

**COMPLAINT ¶30:**

Swallow and Johnson discussed how contributing to Lee's campaign would help

protect and advance Johnson's business interests.  Johnson has reported that Swallow said to

him: "I'm supporting you, and supporting your processing of poker . . . you don't have to worry about anything on the state level, but if the federal government comes after poker, you wanna head that off and this is how you do it."  Johnson has also stated that Swallow said to him: "[W]e've gotta raise this money and we gotta make Mike Lee our guy. . . . [H]e's gonna be choosing the next U.S. Attorney and you gotta have him in your corner and you gotta have the U.S. Attorney in your corner, especially while you're processing poker in this district."

**ANSWER:**

Defendant lacks sufficient information to form a belief regarding what statements Jeremy Johnson has attributed to Defendant and on that basis denies the same.  Defendant denies having made those statements and denies all other allegations of Paragraph 30.

**COMPLAINT ¶31:**

Johnson entered into arrangements or understandings with his straw donors that they would contribute funds to Lee's campaign and that Johnson would supply them with the funds for those contributions.  As Johnson has described, he would simply tell a potential straw donor: "Hey would you donate to Mike Lee?  I'll get you the money."

**ANSWER:**

Defendant lacks sufficient information to form a belief regarding any arrangement or understandings Johnson had with others or regarding whether Jeremy Johnson utilized so-called "straw donors" to make donations to candidate Mike Lee.  Defendant also lacks sufficient information to form a belief regarding what statements Jeremy Johnson might have made to others and on that basis denies the same.  Defendant denies all other allegations of Paragraph 31.

**COMPLAINT ¶32:**

Johnson's straw donors transmitted funds to Lee's campaign that collectively amounted to approximately $50,000. Johnson supplied his straw donors with those funds by either advancing them the money for the contributions they would make to Lee's campaign or reimbursing them for the contributions they had already made to Lee's campaign.

**ANSWER:**

Defendant lacks sufficient information to form a belief regarding the allegations of Paragraph 32 of the Complaint and on that basis denies the same.

**COMPLAINT ¶33:**

In addition to soliciting Johnson to fund the straw donor contributions to the Lee campaign, Swallow actively furthered the contribution scheme when he alerted Johnson that certain straw donors' contribution checks had bounced and reminded Johnson of the urgency of those contributions. On June 21, 2010, Swallow e-mailed Johnson to inform him that: "I was told that [four] of those checks bounced. I'll forward you the names. We are working hard and tomorrow is the big day."

**ANSWER:**

Defendant admits only that he emailed Johnson on June 21, 2010 and that the email speaks for itself and denies all other allegations of Paragraph 33.

**COMPLAINT ¶34:**

Johnson made the contributions described in paragraphs 27 and 29-33 for the purpose of influencing the 2010 Republican primary election for United States Senate in Utah or the 2010 general election for United States Senate in Utah.

**ANSWER:**

Defendant lacks sufficient information to form a belief as to the allegations of Paragraph 34 and on that basis denies the same.

**COMPLAINT ¶35:**

Johnson made the contributions described in paragraphs 27 and 29-33 voluntarily and with an awareness that they were unlawful.

**ANSWER:**

Defendant lacks sufficient information to form a belief regarding whether Jeremy Johnson made the contributions at issue and, if so, whether they were made voluntarily and with an awareness that they were unlawful, and on that basis denies the allegations of Paragraph 35.

**COMPLAINT ¶36:**

Swallow made contributions in the name of another to Lee's campaign voluntarily and with an awareness that they were unlawful when he caused, helped, and assisted Johnson to advance or reimburse the contributions described in paragraphs 27 and 29-33 for the purpose of influencing the 2010 Republican primary election for United States Senate in Utah or the 2010 general election for United States Senate in Utah.

**ANSWER:**

Defendant denies the allegations of Paragraph 36.

**COMPLAINT ¶37:**

In 2010, Johnson used the names of others to contribute approximately $20,000 to then-Majority Leader Harry Reid, who was a candidate in the June 2010 primary election for the Democratic nomination for United States Senate in Nevada, and who, after winning that election, became a candidate in the November 2010 general election for United States Senate in

Nevada.

**ANSWER:**

Defendant lacks sufficient information to form a belief regarding the allegations of Paragraph 37 and on that basis denies the same.

**COMPLAINT ¶38:**

In 2010, Johnson discussed with individuals in the online-poker gaming industry, including Ray Bitar, a principal of an internet-poker company called Full Tilt Poker, using straw donors to contribute unlawful amounts to federal candidates, including Majority Leader Reid, in an attempt to protect or further their business interests. Full Tilt Poker became a defendant in a civil asset forfeiture case brought by the United States Attorney's Office in the Southern District of New York in 2011. *See United States v. Pokerstars, et al.*, No. 11-cv-2564 (S.D.N.Y.).

**ANSWER:**

Defendant lacks sufficient information to form a belief regarding the allegations of Paragraph 38 and on that basis denies the same.

**COMPLAINT ¶39:**

During the time relevant to this case, Johnson owned an internet-marketing company named I Works. In 2010, the Federal Trade Commission was investigating complaints that I Works charged customers without authorization and engaged in other fraudulent trade practices. In the latter half of 2010, Johnson unsuccessfully sought Majority Leader Reid's assistance in halting the Federal Trade Commission's investigation. In December 2010, the Federal Trade Commission filed suit against Johnson and some of his associates and businesses, including I Works, in the United States District Court for the District of Nevada.

*See FTC v. Johnson, et al.*, No. 2:10-cv-2203 (D. Nev.).  Also as a result of I Works' allegedly

unlawful business practices, Johnson was criminally indicted in June 2011 in the United States

District Court for the District of Utah.  *See United States v. Johnson et al.*, No. 2:11-cr-0501

(D. Utah).

**ANSWER:**

Defendant lacks sufficient information to form a belief regarding (a) the allegations

relative to the ownership of I-Works and the nature of its business, (b) the nature, purpose and

grounds of any Federal Trade Commission investigation, although Defendant admits that in

December, 2010, the Federal Trade Commission filed a lawsuit, and that the lawsuit and the

pleadings and other documents filed therein speak for themselves, (c) the grounds for the Jeremy

Johnson criminal indictment in the United States District Court for the District of Utah in June,

of 2011, and (d) the details of his lobbying efforts with the Federal Trade Commissioners and

staff, if any were commenced.  Defendant accordingly denies all allegations of Paragraph 39.

**COMPLAINT ¶40:**

Johnson entered into arrangements or understandings with his straw donors that  they

would contribute funds to Majority Leader Reid's campaign, and that Johnson would supply

them with the funds for those contributions.

**ANSWER:**

Defendant lacks sufficient information to form a belief regarding the allegations of

Paragraph 40 and on that basis denies the same.

**COMPLAINT ¶41:**

Johnson's straw donors transmitted funds to Majority Leader Reid's campaign  that

collectively amounted to approximately $20,000.  Johnson supplied his straw donors with

those funds by either advancing them the money for the contributions they would make, or reimbursing them for the contributions they had already made, to the Reid campaign.

**ANSWER:**

Defendant lacks sufficient information to form a belief regarding the allegations of Paragraph 41 and on that basis denies the same.

**COMPLAINT ¶42:**

Johnson made the contributions described in paragraphs 37-38 and 40-41 for the purpose of influencing the 2010 Democratic primary election for United States Senate in Nevada or the 2010 general election for United States Senate in Nevada.

**ANSWER:**

Defendant lacks sufficient information to form a belief as to the allegations of Paragraph 42 and on that basis denies the same.

**COMPLAINT ¶43:**

Johnson made the contributions described in paragraphs 37-38 and 40-41 voluntarily and with an awareness that they were unlawful.

**ANSWER:**

Defendant lacks sufficient information to form a belief regarding the allegations of Paragraph 43 and on that basis denies the same.

**COMPLAINT ¶44:**

The straw donors for Johnson's unlawful contributions to the Shurtleff, Lee, and Reid campaigns included Johnson's family members, employees, friends, and business associates.

**ANSWER:**

Defendant lacks sufficient information to form a belief regarding whether donors were straw donors, whether the donations were unlawful, and the nature of the relationship between Jeremy Johnson and any donors associated with him and on that basis Defendant denies the allegations of Paragraph 44.

**COMPLAINT ¶45:**

In an attempt to conceal his illicit scheme, Johnson sometimes used cash to advance funds to his straw donors or to reimburse them for their donations to the candidates.

**ANSWER:**

Defendant lacks sufficient information to form a belief regarding the allegations of Paragraph 45 and on that basis denies the same.

**COMPLAINT ¶46:**

Also, Johnson and his straw donors at times used companies and accounts that they owned or effectively controlled to execute and attempt to conceal Johnson's illegal contributions.

**ANSWER:**

Defendant lacks sufficient information to form a belief regarding the allegations of Paragraph 46 and on that basis denies the same.

**COMPLAINT ¶47:**

For example, Johnson enlisted one of his business associates, Arvin Lee Black II, to act as a straw donor and to recruit other straw donors for Johnson's illicit contributions. On June 14, 2010, Triple 7, a company Johnson owned or effectively controlled, issued a check for

$14,400 to Sole Group LLC, a company owned or controlled by Black.  The $14,400 amount of that check was the exact amount needed to fund six contributions of $2,400 each, which was FECA's applicable limit for contributions to federal candidates in the 2009-2010 election cycle.

**ANSWER:**

Defendant lacks sufficient information to form a belief regarding the allegations of Paragraph 47 and on that basis denies the same.

**COMPLAINT ¶48:**

The same day that Triple 7 issued its $14,400 check to Sole Group LLC, Sole Group LLC issued six checks for $2,400 each (totaling $14,400) made payable sequentially to Arvin Lee Black II, Atia Black, Matthew Black, Savannah Jones, Kyle Boyer, and Tiffany Boyer.  Each of those six individuals attempted to make contributions in the amount of $2,400 each to the Lee campaign in June 2010.  Some of their checks bounced, but at least four of the contributions, for a total of $9,600, were successfully made.

**ANSWER:**

Defendant lacks sufficient information to form a belief regarding the allegations of Paragraph 48 and on that basis denies the same.

**COMPLAINT ¶49:**

On June 21, 2010, Swallow informed Johnson about the four bounced contribution checks, and Johnson responded that he would "fix" the problem immediately.  The following day, three of the four contributors whose contributions had bounced issued new contribution checks to the Lee campaign.  One of the re-submitted checks also bounced.

**ANSWER:**

Defendant admits only that he sent an email to Jeremy Johnson on or about June 21, 2010 informing Johnson of bounced checks and that Jeremy Johnson sent a reply email and those items of correspondence speak for themselves. Defendant denies all other allegations in Paragraph 49.

**ADMINISTRATIVE PROCEEDINGS AS TO JEREMY JOHNSON**

**COMPLAINT ¶50:**

On June 30, 2014, the Commission received an administrative complaint alleging, among other things, that Johnson used the names of others to contribute $50,000 to the Lee Senate campaign; that Black was one of Johnson's straw donors; and that Swallow had previously discussed with Johnson using the names of others to contribute to Shurtleff's 2010 Senate campaign.

**ANSWER:**

Defendant lacks sufficient information to form a belief regarding when the Plaintiff received materials and on that basis denies the same.

**COMPLAINT ¶51:**

On July 3, 2014, the Commission notified Johnson that the administrative complaint had been filed. The Commission provided Johnson with a copy of the administrative complaint and an opportunity to respond. *See* 52 U.S.C. § 30109(a)(1). Johnson did not submit a written response to the administrative complaint.

**ANSWER:**

Defendant lacks sufficient information to form a belief regarding the interactions, if any, between Plaintiff and Jeremy Johnson, and on that basis denies the same.

**COMPLAINT ¶52:**

After reviewing the then-available information, on November 18, 2014, the

Commission, by an affirmative vote of at least four of its members, found reason to believe that

Johnson had violated 52 U.S.C. §§ 30116(a)(1)(A) and 30122 by making excessive

contributions  in the names of others to the Lee campaign.  The Commission notified Johnson of

its reason-to-  believe findings in a letter dated December 22, 2014.  *See* 52 U.S.C. §

30109(a)(2).

**ANSWER:**

Defendant lacks sufficient information to form a belief regarding the actions of the

Commission or the interactions, if any, between Plaintiff and Jeremy Johnson, and on that basis

denies the same.

**COMPLAINT ¶53:**

 After conducting an investigation, the Commission's Office of the General  Counsel

notified Johnson by letter dated March 11, 2015 that it was prepared to recommend that the

Commission find probable cause to believe that Johnson knowingly and willfully violated 52

U.S.C. §§ 30116(a)(1)(A) and 30122.  The Office of the General Counsel also provided Johnson

with a brief stating its position on the legal and factual issues of the matter.  *See* 52 U.S.C. §

30109(a)(3).  Johnson did not submit a reply.

**ANSWER:**

Defendant lacks sufficient information to form a belief regarding the actions of the

Commission or the interactions, if any, between Plaintiff and Jeremy Johnson, or regarding the

contents of communications between Jeremy Johnson and the Plaintiff, and on that basis denies

the same.

**COMPLAINT ¶54:**

After reviewing the information then available, on April 16, 2015, the Commission, by an affirmative vote of at least four of its members, found probable cause to believe that Johnson knowingly and willfully violated 52 U.S.C. §§ 30116(a)(1)(A) and 30122 by making excessive contributions in the names of others to federal campaigns. *See* 52 U.S.C. § 30109(a)(3).

**ANSWER:**

Defendant lacks sufficient information to form a belief regarding the actions and determinations of the Commission, or the basis upon which the Commission relied in making findings, and on that basis denies the same.

**COMPLAINT ¶55:**

The Commission notified Johnson of its probable cause findings against him by letter dated April 20, 2015. The Commission then endeavored to correct Johnson's violations through informal methods of conference, conciliation, and persuasion, for a period of not less than 30 days. *See* 52 U.S.C. § 30109(a)(4)(A).

**ANSWER:**

Defendant lacks sufficient information to form a belief regarding the Commission's actions, determinations and attempts to correct any real or perceived violations of law with respect to Jeremy Johnson or its meeting the requirements of the law, and on that basis denies the same.

**COMPLAINT ¶56:**

On May 15, 2015, Johnson signed an agreement tolling the statute of limitations for 30 days.

**ANSWER:**

Defendant lacks sufficient information to form a belief regarding what Jeremy Johnson signed and its impact on the statute of limitations, and on that basis denies the same.

**COMPLAINT ¶57:**

Unable to secure an acceptable conciliation agreement, on June 15, 2015, the Commission, by an affirmative vote of at least four of its members, authorized filing this suit against Johnson. *See* 52 U.S.C. § 30109(a)(6).

**ANSWER:**

Paragraph 57 contains conclusions of law or mixed conclusions of law and fact to which no response is required. To the extent a response is required, Defendant lacks sufficient information to form a belief regarding the efforts and activities of the Plaintiff relative to a conciliation or relative to the Plaintiff's vote or whether or not the Plaintiff was authorized to file this suit against Jeremy Johnson, and on that basis denies the same.

**COMPLAINT ¶58:**

The Commission has satisfied all of the jurisdictional requirements in FECA that are prerequisites to filing this action.

**ANSWER:**

Paragraph 58 contains conclusions of law or mixed conclusions of law and fact to which no response is required. To the extent a response is required, Defendant lacks sufficient information to form a belief regarding whether the Plaintiff has satisfied jurisdictional requirements or prerequisites to filing this action, and on that basis denies the same.

## ADMINISTRATIVE PROCEEDINGS AS TO JOHN SWALLOW

**COMPLAINT ¶59:**

On June 30, 2014, the Commission received an administrative complaint alleging, among other things, that Johnson used the names of others to contribute $50,000 to the Lee Senate campaign; that Black was one of Johnson's straw donors; and that Swallow had previously discussed with Johnson using the names of others to contribute to Shurtleff's 2010 Senate campaign.

**ANSWER:**

Defendant lacks sufficient information to form a belief regarding when the Plaintiff received an administrative complaint related to Defendant and on that basis denies the same. Defendant affirmatively states that any administrative complaint in the possession of Plaintiff speaks for itself and denies all allegations concerning what the administrative complaint purports to state, inconsistent with said administrative complaint, which, to the extent it alleges any violation of law, is substantively denied by Defendant.

**COMPLAINT ¶60:**

On July 3, 2014, the Commission notified Swallow that the administrative  complaint had been filed.  The Commission provided Swallow with a copy of the administrative complaint and an opportunity to respond.  *See* 52 U.S.C. § 30109(a)(1).  On October 2, 2014, Swallow submitted a written response to the administrative complaint.

**ANSWER:**

Defendant lacks sufficient information to form a belief regarding when the Plaintiff "notified" Defendant and on that basis denies the same.  Defendant affirmatively states that he was provided with a copy of an administrative complaint and that a written response was

submitted on Defendant's behalf by Defendant's legal counsel and denies all other allegations of Paragraph 60.

**COMPLAINT ¶61:**

After reviewing the then-available information, on November 18, 2014, the Commission, by an affirmative vote of at least four of its members, found reason to believe that Swallow had violated 52 U.S.C. § 30122 by making excessive contributions in the names of others to the Lee campaign. The Commission notified Swallow of its reason-to-believe findings in a letter dated December 22, 2014. *See* 52 U.S.C. § 30109(a)(2).

**ANSWER:**

Paragraph 61 contains conclusions of law or mixed conclusions of law and fact to which no response is required. To the extent a response is required, Defendant lacks sufficient information to form a belief regarding the actions of the Plaintiff, the mechanics and results of any discussion or vote, and the findings and on that basis denies the same. Defendant admits that he was notified at some point of Plaintiff's actions and denies all other allegations of Paragraph 61.

**COMPLAINT ¶62:**

On January 6, 2015, Swallow designated counsel to represent him in this matter, and, on January 22, 2015, Swallow's counsel signed an agreement tolling the statute of limitations for 90 days.

**ANSWER:**

Defendant admits he designated legal counsel to represent him as of the date of any correspondence submitted by attorney Scott Thomas indicating the same, and denies all other allegations of Paragraph 62. To the extent any agreement was made or signed, that agreement

speaks for itself.

**COMPLAINT ¶63:**

After conducting an investigation, the Commission's Office of the General Counsel notified Swallow's counsel on May 28, 2015 that it was prepared to recommend that the Commission find probable cause to believe that Swallow knowingly and willfully violated 52 U.S.C. § 30122. The Office of the General Counsel also provided Swallow's counsel with a brief stating its position on the legal and factual issues of the matter. *See* 52 U.S.C. § 30109(a)(3).

**ANSWER:**

Paragraph 63 contains conclusions of law or mixed conclusions of law and fact to which no response is required. To the extent a response is required, Defendant lacks sufficient information to form a belief regarding any investigation or other actions or and determinations of the Commission, the basis upon which the Commission relied in making findings, or when the Plaintiff notified Defendant's counsel and on that basis denies the same. Defendant admits that at some point Defendant's counsel received a copy of legal memoranda stating the Commission's Office of the General Counsel's position and denies all other allegations of Paragraph 63.

**COMPLAINT ¶64:**

On June 12, 2015, Swallow's counsel signed an agreement tolling the statute of limitations for 30 days. On July 10, 2015, Swallow's counsel signed an agreement tolling the statute of limitations for 14 days. On July 27, 2015, Swallow's counsel signed an agreement tolling the statute of limitations for 40 days. On August 17, 2015, Swallow's counsel signed an agreement tolling the statute of limitations for 3 days.

**ANSWER:**

Defendant lacks sufficient information to form a belief regarding when documents may have been signed and the legal significance of those documents and on that basis denies the same.  To the extent any agreements were made or signed, those agreements speaks for themselves.

**COMPLAINT ¶65:**

On August 20, 2015, Swallow's counsel submitted a reply brief and included a request for a probable cause hearing.  On September 3, 2015, the Commission's Office of the General Counsel notified Swallow's counsel by e-mail that the Commission had approved the request.  *See* Amendment of Agency Procedures for Probable Cause Hearings, 74 Fed. Reg.  55,443 (Oct. 28, 2009); Procedural Rules for Probable Cause Hearings, 72 Fed. Reg. 64,919  (Nov. 19, 2007).  On September 9, 2015, Swallow's counsel signed an agreement tolling the  statute of limitations for 27 days.  On September 30, 2015, the Commission held a probable cause hearing attended by Swallow's counsel.

**ANSWER:**

Paragraph 65 contains conclusions of law or mixed conclusions of law and fact to which no response is required.  To the extent a response is required, Defendant admits that he, through counsel, submitted a reply brief which included a request for a probable cause hearing and that the Commission held a probable cause hearing attended by his counsel and denies all other allegations of Paragraph 65.  To the extent any agreement was made or signed, that agreement speaks for itself.

**COMPLAINT ¶66:**

The Commission's Office of the General Counsel notified Swallow's counsel by letter

dated October 15, 2015 that it had recommended that the Commission find probable cause to

believe that Swallow knowingly and willfully violated 52 U.S.C. § 30122.  The Office of the

General Counsel also provided Swallow's counsel with a copy of its notice to the Commission

stating that it intended to proceed with the recommendation to find probable cause and stating

its  position on the legal and factual issues of the matter.  *See* 52 U.S.C. § 30109(a)(3).

**ANSWER:**

Paragraph 66 contains conclusions of law or mixed conclusions of law and fact to which

no response is required.  To the extent a response is required, Defendant admits only that a

recommendation by the Commission's Office of General Counsel was communicated to

Defendant's counsel and that Defendant's counsel received additional briefing materials.

Defendant denies all other allegations of Paragraph 66 based on a lack of sufficient information

to admit or deny.

**COMPLAINT ¶67:**

On October 22, 2015, Swallow's counsel submitted a request to respond to the Office

of the General Counsel's factual and legal analysis in its notice to the Commission.  *See*

Agency Procedure Following the Submission of Probable Cause Briefs by the Office of

General  Counsel, 76 Fed. Reg. 63,570 (Oct. 13, 2011).  The request was not approved because

it did not receive at least four affirmative votes by Commission members.

**ANSWER:**

Paragraph 67 contains conclusions of law or mixed conclusions of law and fact to

which no response is required.  As set forth in the Answer to Paragraph 66, Defendant admits

that his counsel requested the opportunity to respond to new additional and prejudicial material

and argument submitted by the Commission's Office of General Counsel to the Plaintiff

following the probable cause hearing and admits that the request was not approved.  Defendant

denies all allegations of Paragraph 67 not admitted herein.

**COMPLAINT ¶68:**

After reviewing the information then available, on October 27, 2015, the

Commission, by an affirmative vote of at least four of its members, found probable cause

to  believe that Swallow knowingly and willfully violated 52 U.S.C. § 30122.  *See* 52

U.S.C. § 30109(a)(3).

**ANSWER:**

Paragraph 68 contains conclusions of law or mixed conclusions of law and fact to which

no response is required.  To the extent a response is required, Defendant lacks sufficient

information to form a belief regarding the review and other actions of Commissioners and on

that basis denies the same and all other allegations of Paragraph 68.

**COMPLAINT ¶69:**

The Commission notified Swallow's counsel of its probable cause findings by  letter

dated October 29, 2015.  The Commission then endeavored to correct Swallow's violations

through informal methods of conference, conciliation, and persuasion, for a period of not less

than 30 days.  *See* 52 U.S.C. § 30109(a)(4)(A).

**ANSWER:**

Paragraph 69 contains conclusions of law or mixed conclusions of law and fact to which

no response is required.  To the extent a response is required, Defendant lacks sufficient

information to form a belief regarding the actions of the Commission to "correct Swallow's

violations through informal methods of conference, conciliation, and persuasion, for a period of

not less than 30 days" and on that basis denies the same.  Defendant affirmatively denies that it

violated any law or engaged in any illegal activity and denies all allegations of Paragraph 69.

**COMPLAINT ¶70:**

Unable to secure an acceptable conciliation agreement, on December 4, 2015, the Commission, by an affirmative vote of at least four of its members, authorized filing this suit against Swallow. *See* 52 U.S.C. § 30109(a)(6).

**ANSWER:**

Paragraph 70 contains conclusions of law or mixed conclusions of law and fact to which no response is required. To the extent a response is required, Defendant lacks sufficient information to form a belief regarding the actions of the Commission to secure an acceptable conciliation agreement or concerning the vote authorizing the filing of this suit, and on that basis denies the same.

**COMPLAINT ¶71:**

The Commission has satisfied all of the jurisdictional requirements in FECA that are prerequisites to filing this action.

**ANSWER:**

Paragraph 71 contains conclusions of law to which no response is required. To the extent a response is required, Defendant lacks sufficient information to form a belief regarding whether or not the Commission has satisfied all jurisdictional requirements prerequisite to filing this suit and on that basis denies the same.

**FIRST CAUSE OF ACTION**

**COMPLAINT ¶72:**

Paragraphs 1 through 71, inclusive, are incorporated herein by reference.

**ANSWER:**

In response to Paragraph 72, Defendant incorporates his responses to Paragraphs 1 through 71 of the Complaint as though more specifically set forth herein.

**COMPLAINT ¶73:**

Defendant Jeremy Johnson knowingly and willfully violated 52 U.S.C. § 30116(a)(1)(A) by contributing approximately $50,000 to Mike Lee's Senate campaign and  about $20,000 to Majority Leader Harry Reid's Senate campaign during the 2009-2010 election  cycle.

**ANSWER:**

Paragraph 73 contains conclusions of law or mixed conclusions of law and fact to which no response is required.  To the extent a response is required, Defendant lacks sufficient information to form a belief regarding what Jeremy Johnson did or did not do with respect to contributing to the Mike Lee Senate campaign and/or Majority Leader Harry Reid's Senate campaign during the 2009-2010 election cycle and on that basis denies all allegations of Paragraph 73.

### SECOND CAUSE OF ACTION

**COMPLAINT ¶74:**

Paragraphs 1 through 71, inclusive, are incorporated herein by reference.

**ANSWER:**

In response to Paragraph 74, Defendant incorporates his responses to Paragraphs 1 through 71 of the Complaint as though more specifically set forth herein.

**COMPLAINT ¶75:**

Defendant Jeremy Johnson knowingly and willfully violated 52 U.S.C. § 30122  by using straw donors to contribute approximately $50,000 to Mike Lee's Senate campaign and about $20,000 to Majority Leader Harry Reid's Senate campaign during the 2009-2010

election cycle.

**ANSWER:**

Paragraph 75 contains conclusions of law or mixed conclusions of law and fact to which

no response is required.  To the extent a response is required, Defendant lacks sufficient

information to form a belief regarding what Jeremy Johnson did or did not do with respect to

contributing to the Mike Lee Senate campaign and/or Majority Leader Harry Reid's Senate

campaign during the 2009-2010 election cycle and on that basis denies all allegations of

Paragraph 75.

### THIRD CAUSE OF ACTION

**COMPLAINT ¶76:**

Paragraphs 1 through 71, inclusive, are incorporated herein by reference.

**ANSWER:**

In response to Paragraph 76, Defendant incorporates his responses to Paragraphs 1 through

71 of the Complaint as though more specifically set forth herein.

**COMPLAINT ¶77:**

Defendant John Swallow knowingly and willfully violated 52 U.S.C. § 30122 and 11

C.F.R. § 110.4(b)(1)(iii) (2010) by making contributions in the name of another when he

caused, helped, and assisted Johnson to advance or reimburse the approximately $50,000 in

contributions through straw donors to Mike Lee's campaign for United States Senate during the

2009-2010 election cycle.

**ANSWER:**

Paragraph 77 contains conclusions of law or mixed conclusions of law and fact to which

no response is required.  To the extent a response is required, Defendant denies the allegations

of Paragraph 77 of the Complaint.

## PRAYER FOR RELIEF

Defendant denies the Plaintiff is entitled to any of the relief requested in sub-paragraphs A through J of the Complaint or any other relief whatsoever.

## JURY TRIAL DEMAND

Defendant hereby demands that all issues in this proceeding be tried to a jury to the fullest extent permitted as a matter of law.

## AFFIRMATIVE AND OTHER DEFENSES

Defendant asserts the following affirmative and other defenses without assuming any burdens of production or proof that, pursuant to law, belong to Plaintiff.  Defendant reserves the right to amend its answer and to assert any additional defenses assert any additional defenses and affirmative defenses as may become available or apparent during the course of this litigation.

### FIRST DEFENSE

Plaintiff's Complaint, in whole or in part, fails to state a claim against Defendant upon which relief can be granted.

### SECOND DEFENSE

Claims in Plaintiff's Complaint for damages or other relief against Defendant are barred to the extent Plaintiff seeks damages or other relief for actions outside the applicable statute of limitations.

### THIRD DEFENSE

Claims in Plaintiff's Complaint for damages or other relief are barred to the extent that the applicable federal regulations were not promulgated in accordance with the federal Administrative Rules Procedures Act or the federal regulations are not valid for any reason,

including an unlawful or unauthorized encroachment on Congressional authority. This defense specifically includes, but is not limited to, the promulgation of the regulatory rules relied upon by Plaintiff did not follow the proper procedures of the Administrative Rules Procedures Act. This defense also specifically includes, but is not limited to, Plaintiff's claims of aiding or abetting or conspiracy theories are not justified by any statute, have not been authorized by congress, and is an improper assertion of governmental regulatory authority. This defense also specifically includes, but is not limited to, the encroachment by regulation upon fundamental constitutional speech rights inherent in political fundraising and the type of speech incidental to fundraising activities.

## FOURTH DEFENSE

Claims in Plaintiff's Complaint for damages or other relief are barred to the extent that Plaintiff failed to satisfy and exhaust the administrative prerequisites necessary to asserting such claims, including, without limitation, the prejudicial failure of at least one Commissioner to recuse himself when he himself had raised the issue of a conflict, when with two other Commissioners having recused, one more recusal would have resulted in the inability of the Commission to have the four votes necessary to find probable cause of a violation and recommend the filing of this suit.

## FIFTH DEFENSE

Claims in Plaintiff's Complaint for damages or other relief are barred by the doctrines of waiver, laches, estoppel, res judicata, issue preclusion, and/or claim preclusion.

## SIXTH DEFENSE

Claims in Plaintiff's Complaint for damages or other relief are barred to the extent that they are beyond the scope of any administrative charge or the FEC's investigation thereof, were

not subject to administrative, investigative, or conciliatory processes,  and/or were not included in any investigation and/or determination by the FEC.

## SEVENTH DEFENSE

 Claims in Plaintiff's Complaint for damages or other relief are barred by the doctrine of unclean hands, including undue influence by the Commission's Office of General Counsel due in part to its relationship with Steven Reich, who as a former senior member of the United States Department of Justice, and as the lead attorney in the Utah House of Representative's Special Investigative Committee related to the investigation of Defendant, who, upon belief, made requests of the Commission's Office of General Counsel regarding Defendant's administrative proceeding and the information provide to the Commission in its investigation.

## EIGHTH DEFENSE

Claims in Plaintiff's Complaint for damages or other relief on behalf are barred by the acts of one or more third parties or defendant Johnson.

## NINTH DEFENSE

Claims in Plaintiff's Complaint for damages or other relief are barred to the extent that they seek relief for acts which do not fall within the continuing violation doctrine and are time barred.

## TENTH DEFENSE

While Defendant denies that he acted in any manner that would constitute a violation of any laws, if any such violation occurred, it occurred outside the scope of employment or agency and without the consent of Defendant.  Defendant did not authorize, condone, ratify, or tolerate any illegal acts, but instead prohibited such acts, and illegal conduct on the part of defendant Jeremy Johnson may not be attributed to Defendant through principles of agency, respondeat

superior, or otherwise.

## ELEVENTH DEFENSE

Plaintiff's claims are barred to the extent Plaintiff has failed to meet all of the administrative or statutory prerequisites to filing suit, including but not limited to, mandatory conciliation.

## TWELFTH DEFENSE

Plaintiff's claims are barred to the extent Plaintiff is relying on information that should be suppressed and is inadmissible.

## THIRTEENTH DEFENSE

Plaintiff's claims are barred by the doctrine of unclean hands to the extent that Plaintiff, or its agents, investigators, or representatives obtained evidence and testimony against Defendant through improper, illegal, or inadmissible means.

## FOURTEENTH DEFENSE

Defendant specifically reserves the right to amend this Answer with additional affirmative defenses and/or counterclaims as additional investigation, discovery and circumstances may warrant.

WHEREFORE, Defendant denies that Plaintiff is entitled to any relief and requests that Plaintiff's Complaint be dismissed in its entirety with prejudice, that judgment be entered in Defendant's favor and that Defendant be awarded its costs, attorneys' fees, and such other relief as this Court deems appropriate.

DATED: May 16, 2016                    SCOTT C. WILLIAMS


                                       By:/s/ Scott C. Williams_____
                                           Scott C. Williams
                                           Attorney for Defendant
                                           John Swallow