IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| FEDERAL ELECTION COMMISSION, <br><br> Plaintiff, <br><br><br> v. <br><br><br> JOHN SWALLOW and JEREMY JOHNSON, <br><br> Defendants. | **MEMORANDUM DECISION AND ORDER** <br><br><br><br> Case No. 2:15-cv-439-DB <br> Judge Dee Benson |

In this case, the Federal Election Commission accuses two individuals of violating the

Federal Election Campaign Act's prohibition on making contributions in the name of another.

Defendant Jeremy Johnson is accused of making approximately twenty contributions to the 2010

senatorial campaign of Mike Lee in the names of other people.  Defendant John Swallow is not

accused of making any contributions himself but of assisting Defendant Johnson in doing so.

The motion now before the Court is Defendant Swallow's motion to dismiss the case against him

because what he is accused of is not against the law.  His position is straightforward: the Federal

Election Campaign Act applies to only three types of people and he is not one of them.  He

claims that the case against him only charges him with secondary liability and that Congress

clearly did not include a ban against secondary actors in the Act.  The case against Defendant Swallow rests entirely on 11 C.F.R. §110.4(b)(1)(iii), which he argues is a regulation beyond the Commission's authority to adopt.  In Mr. Swallow's view, the provision is unauthorized law-making in violation of the United States Constitution, which vests legislative power solely in the United States Congress.

The Commission admits that its case against Mr. Swallow is based on the CFR, which was adopted in 1989.  It claims that the CFR is a proper exercise of the Commission's authority to enforce FECA.  It claims that a person such as Mr. Swallow, who assists another person in violating the Act, is just as liable as the person who made the improper contribution.  The Commission goes so far as to say that a person who does not part with his own money and whose only role is to assist another to make a contribution in someone else's name qualifies as a person who actually "makes" the contribution.  On this basis, the Commission both opposes Mr. Swallow's motion and asks the Court to grant its own motion for partial judgment on the pleadings.

Oral argument was heard on the motions on March 27, 2018.  Ms. Sana Chaudhry and Mr. Harry Summers appeared on behalf of the Commission, with Ms. Chaudhry making the argument.  Mr. Allen Dickerson, Mr. Tyler Martinez, and Mr. Scott Williams appeared on behalf of Mr. Swallow, with Mr. Dickerson making the argument.

## DISCUSSION

Congress passed the Federal Election Campaign Act in 1971 ("FECA"). 52 U.S.C.

§§30101-46.  The Act placed limits on the amount of money a person is allowed to contribute to

a candidate for federal office.  In 2010, the amount was $2,400.00 per election cycle.  Section

30122 states as follows:

> No person shall make a contribution in the name of another
> person or knowingly permit his name to be used to effect such
> a contribution, and no person shall knowingly accept a
> contribution made by one person in the name of another person.

52 U.S.C. §30122.

In 1974, Congress created the Federal Election Commission ("FEC" or "the

Commission") as an independent agency to civilly enforce FECA's monetary limits and

disclosure requirements.  In 1976, the Commission promulgated a regulation regarding FECA's

ban on contributions made in the name of another, which made specific reference to the two most

common forms of such contributions: false name and conduit contributors.  11 C.F.R. §110.4(b).

A false name contribution occurs when a person contributes to a candidate but falsely attributes

another person as the source of the contribution.  A conduit contribution reaches the same result

when a person provides funds to another person (the conduit) who contributes the funds to the

candidate.

For 13 years after 11 C.F.R. §110.4(b) was established, it was the only regulation adopted

by the Commission that dealt with section 30122's ban against making contributions in the name

of another.  There is no question this 1974 regulation is a proper reflection of the law passed by

Congress.  In 1989, however, the Commission decided to add a new regulation which for the first

time declared that "no person shall *knowingly help or assist* any person in making a contribution

in the name of another." 11 C.F.R. §110.4(b)(1)(iii) (emphasis added).  The Commission's basis

for adopting the new "helping and assisting" provision was an unpublished case from the United

States District Court for the Middle District of Florida, *Federal Election Commission v.*

*Rodriguez*, Case No. 86-687 Civ-T-10 (M.D. Fla. Oct. 28, 1988), in which the court held that a

defendant had violated FECA's section 30122 by "knowingly assisting in the making of

contributions in the name of another."  (Dkt. 103, Ex. A at 2.)  Apparently impressed with what

the district judge did to a pro se defendant in *Rodriguez*, the Commission felt justified to adopt

the new provision.  In its "interpretive guidance" for the new regulation, the Commission

explained that it applies to: "those who initiate or instigate or have some significant participation

in a plan or scheme to make a contribution in the name of another, including those who solicit or

act as go-betweens to third parties whose donations are reimbursed." 11 C.F.R. 110.4(b)(1)(iii);

54 Fed. Reg. at 34, 104-05 (1989).

      Thus, for the first time, secondary actors, what the criminal law calls "aiders and

abettors," and what the new regulation calls "helpers and assisters," were brought into the realm

of persons who face civil liability under FECA.

      The question framed by the parties' cross motions, as outlined above, asks simply

whether the Federal Election Commission had the right to promulgate section 110.4(b)(1)(iii).

The answer is no.  The Commission, as an independent agency created by Congress for the sole

purpose of enforcing FECA had no authority to write a regulation that went beyond the Act itself.

The Court finds FECA's language to be unambiguous.  It is limited to a prohibition on three

types of persons and only those three:  1) a person who makes a contribution in the name of

another; 2) a person who knowingly allows his name to be used by the contributor; and 3) a

candidate who knowingly accepts such a contribution.  Nowhere in the language of section 30122 is there any room for adding a fourth category consisting of secondary actors.  While it may, or may not, be a good idea to expand the reach of FECA in such a way, such expansion may happen only through an Act of Congress, pursuant to Article I of the United States Constitution. Such power does not exist in an independent agency comprised of six unelected commissioners.

The Commission makes several arguments in an effort to persuade the Court that it had the authority to pass 11 C.F.R. §110.4(b)(1)(iii).  First, it cites the *Rodriguez* case as judicial precedent.  This district court case from the middle district of Florida is neither binding on this Court nor persuasive.  This 1988 case involved the FEC's claim that Mr. Rodriguez had violated FECA by knowingly assisting Mr. Alan Wolfson in making contributions to the Carter/Mondale campaign through conduits.  Mr. Rodriguez did not respond to the complaint and a default judgment was entered against him.  He was ordered him to pay a $5,000 civil penalty.  When he failed to pay the penalty he was held in contempt of court.  There was no written opinion addressing the merits of the case, nor was there any effort by the defendant to challenge the Commission's, or the court's, unprecedented expansion of FECA into secondary liability.

Next, the Commission argues that the language of section 30122 that states: "[N]o person shall make a contribution in the name of another person" should be construed to include as prohibited "persons" not only the person who is the source of the contribution but also those who help or assist the actual contributor.  The Commission claims the word "make" means "to cause (something) to happen" and therefore includes secondary actors together with principals as prohibited persons under section 30122.  The Commission argues as follows:

> Given the broad definition of "make," section 30122 does not unambiguously foreclose that someone can make a contribution in the name of another by initiating, instigating, or significantly participating in a conduit-contribution scheme, even where that person was not the source of the contributed funds. . . . For example, "a head of state 'makes war' through soldiers." . . . "In common usage, one who causes something to happen or brings it about . . . 'made' it happen just the same as the person who executed the action." *United States v. Danielczyk*, 788 F.Supp.2d 472 (E.D. Va. 2011).

(Dkt. 103 at 16 (citation omitted).)

This argument strains logic. First of all, the case cited, *Danielczyk*, had nothing to do with secondary actors who helped and assisted another. It dealt with a conduit-contribution scheme which is clearly within the prohibition of section 30122. Furthermore, the comparison to a "head of state who makes war through soldiers" could hardly be more inapt. The only interpretation of the phrase "no person shall make a contribution in the name of another" in section 30122 that is consistent with the English language is that the prohibited "person" is the actual contributor, that is, the source of the monetary donation. Nothing else makes sense. An apt analogy would be to a person who "makes" a basket in a basketball game. Some other person may have passed the ball to the player who makes the shot, and thereby earns credit for an "assist," but the player who made the assist cannot fairly be considered to be the person who made the basket. Other examples would be a child who "makes" a wish, or, to use the Commission's reference, to a head of state who "makes" a declaration of war. In each example there is a clear reference to only one principal source of the thing made. The same holds true for the persons who "make" contributions to political candidates pursuant to FECA. Only the person (or persons) who are the source (or sources) of the monetary donation can qualify as those who "make" contributions to the political candidates.

6

In pressing its illogical interpretation of the word "make" in the context of FECA, the Commission relies on *Chevron U.S.A., Inc. v. NRDC*, 467 U.S. 837 (1984), to insist that its interpretation of the regulation is entitled to deference from, and must be accepted by, the Court even if the Court favors a different interpretation.  But this use of *Chevron* also misses the point. The first step in the *Chevron* analysis asks whether the underlying statute is ambiguous and only if it is does the court consider (and give deference to) the Agency's interpretation.  Here the statute is unambiguous.  To be subject to the prohibition under the Act, a person who "makes a contribution" is the one who makes it, not a person whose role is limited to helping or assisting the actual contributor (or contributors, as the case may be) in making the contribution in someone else's name. Again, the law clearly focuses on principals, not the secondary actors who do not make a monetary contribution of their own but only perform a supporting role.

The Commission also devotes considerable attention in its briefs, and at oral argument, explaining how 11 C.F.R. §110.4(b)(1)(iii) "is proportional to its goals" and "applies only in cases where the government's disclosure and anti-circumvention interests have actually suffered harm." (Dkt. 103 at p. 9.)  It emphasizes that the regulation is an important tool in the Commission's efforts to combat corruption in federal campaigns.  The Commission correctly points out that *"*[i]f section 30122 did not bar knowingly helping or assisting a conduit-contribution scheme," it would have no case against Mr. Swallow, stating "Johnson's conduit scheme would likely have never occurred, at least in part, if Swallow had not recruited Johnson to make those contributions, given Johnson a motive to do so, and helped Johnson complete the contributions." (Dkt. 103 at p. 8.)  These arguments are unhelpful and unavailing.  They may be

relevant to the Commission's belief that expansion of the Act to include a ban against secondary actors such as Mr. Swallow is important and desirable, but they provide no support whatsoever for the unauthorized promulgation of an illegal regulation.[1]

Finally, the Commission claims 11 C.F.R. §110.4(b)(1)(iii) should be recognized as proper because the Commission has "consistently and repeatedly enforced" the regulation since its inception in 1989.  The six enforcement efforts the Commission cites are all internal to the FEC itself.  The fact that the FEC is fond of enforcing its own creation is not surprising, nor is it surprising that a number of people accused of providing assistance to others who violated the statute would submit to the Agency's will, but such administrative proceedings do nothing to inform whether the Commission had the power to make and enforce the regulation in the first place.  The fact that an independent agency that is not within any of the three constitutional branches of government can subject private citizens to its will is not remarkable.  What is troubling is that the Agency can so easily exercise such improper authority.

In contrast to the FEC's arguments, which are without precedent, Mr. Swallow cites *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994), in

---

[1]In considering the FEC's argument that it needs the regulation against secondary actors because without it "helpers and assisters" such as Mr. Swallow would be allowed to defeat the government's disclosure and anti-circumventing interests, it is worth noting that section 30122 already includes, in addition to civil penalties, the possibility of criminal felony charges. In contrast to the civil penalties under section 30122, in a section 30122 criminal case, secondary actors – those who aid and abet the person who illegally makes a contribution in the name of another (precisely what Mr. Swallow is accused of) – are subject to criminal liability.  This is because the United States criminal code, 18 U.S.C. §2, specifically makes such secondary actors "punishable as a principal."  At oral argument, counsel for Mr. Swallow acknowledged this difference between the civil and criminal systems.

support of his motion. In *Central Bank* the United States Supreme Court held that the government cannot infer secondary liability when the statute in question is silent on that subject. *Id;. see also Boim v. Holy Land Found. For Relief & Dev.*, 549 F.3d 685-89 (7th Cir. 2008)(en banc)("[S]tatutory silence on the subject of secondary liability means there is none.")., *cert. denied sub nom. Boim v. Salah*, 558 U.S. 981 (2009).

In *Central Bank*, the issue was whether secondary civil liability could attach to violations of the securities laws under section 10(b) of the Securities and Exchange Act of 1934. The Bank served as indenture trustee for bond issues surrounding a Colorado development. 511 U.S. at 167. When the real estate did not meet the contractual threshold of value and the issuer defaulted on the bonds, the First Interstate Bank of Denver sued the development authority, the underwriters, and the Central Bank of Denver, claiming "violations of §10(b) of the Securities Exchange Act of 1934." *Id.* at 168. First Interstate argued that Central Bank was vicariously liable for aiding and abetting in the alleged deception of the land value. The statutory language of §10(b) of the Securities Act did not mention aiding and abetting. *Id.* at 175. The Supreme Court stated that "Congress has not enacted a general civil aiding and abetting statute - either for suits by the Government (when the Government sues for civil penalties or injunctive relief) or for suits by private parties." *Id.* at 182. Rather, Congress "instead has taken a statute-by-statute approach to civil aiding and abetting liability." *Id.* at 182-83. "[T]he text of the statute controls our decision," because the government "cannot . . . read [statutory liability] more broadly than its language and the statutory scheme reasonably permit." *Id.* at 174 (quoting *Chiarella v. United States*, 445 U.S. 222, 234 (1980)).

9

The Court agrees with Mr. Swallow that *Central Bank* is applicable here.  As the Supreme Court put it, "courts are not free to 'amend the statute to create liability for acts that are not themselves . . . within the meaning of the statute.'" 511 U.S. at 177-78.  That language is equally applicable in this case where FECA did not prohibit the conduct of those who assist others in violating the statute.

SUMMARY AND CONCLUSION

The United States was founded on the rule of law.  Article I Section 1 of the Constitution vests all legislative power in "a Congress of the United States," which alone is authorized to make laws; all others, including independent government agencies, are not.  The FEC's authority exists no further than the boundaries of the law it was created to enforce.  When it promulgated 11 C.F.R. §110.4(b)(1)(iii), which imposed liability under FECA on secondary actors, it went too far, exceeding its authority to write regulations and improperly intruding into the realm of law-making that is the exclusive province of Congress.  Accordingly, Defendant Swallow's motion to dismiss is GRANTED and the FEC's cross motion for judgment on the pleadings is DENIED. 11 C.F.R. §110.4(b)(1)(iii) is ordered stricken from the Code of Federal Regulations and the FEC is forthwith ENJOINED from enforcing regulation11 C.F.R. §110.4(b)(1)(iii).

IT IS SO ORDERED.

DATED this 5th day of April, 2018.

_____

Dee Benson
United States District Judge

10