Allen Dickerson (*pro hac vice*)
Tyler Martinez (*pro hac vice*)
Owen Yeates (Utah Bar No. 13901)
INSTITUTE FOR FREE SPEECH
124 S. West Street, Suite 201
Alexandria, Virginia 22314
Telephone: 703.894.6800
Facsimile: 703.894.6811
adickerson@ifs.org
tmartinez@ifs.org
oyeates@ifs.org

Scott C. Williams (Utah Bar. No. 6687)
SCOTT C. WILLIAMS, LLC
43 East 400 South
Salt Lake City, Utah 84111
Telephone: 801.220.0700
Facsimile: 801.364.3232
scwlegal@gmail.com

Scott E. Thomas (*pro hac vice*)
BLANK ROME, LLP
1825 Eye Street N.W.
Washington, D.C. 20006
Telephone: 202.420.2601
Facsimile: 202.420.2201
sthomas@blankrome.com

*Counsel for Defendant John Swallow*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| FEDERAL ELECTION COMMISSION, *Plaintiff*, v. JEREMY JOHNSON and JOHN SWALLOW, *Defendants*. | Case No. 2:15-cv-00439-DB **DEFENDANT JOHN SWALLOW'S APPLICATION FOR ATTORNEYS' FEES AND MEMORANDUM IN SUPPORT** District Judge Dee Benson |

# TABLE OF CONTENTS

Introduction ...................................................................................................................1

Argument ......................................................................................................................1

I.    The Equal Access to Justice Act entitles Mr. Swallow to an award of reasonable attorneys' fees from the Federal Election Commission. ................................................1

    a.  John Swallow is the prevailing party. ...................................................................2

    b.  The Commission cannot meet its burden to prove substantial justification. ..........3

    c.  There are no special circumstances in this case that make an award against the Commission unjust. ..............................................................................................7

    d.  Mr. Swallow met the net-worth requirement of the EAJA. ....................................9

    e.  This Application is timely filed. ...........................................................................9

II.    Mr. Swallow requests reasonable attorneys' fees. ......................................................10

    a.  The reported hours of Mr. Swallow's attorneys are reasonable. ...........................10

    b.  The increase in the cost of living yields a lodestar that his higher than the standard $125 per hour rate under the EAJA. ...................................................................11

       i.  The statutory rate provides the minimum for attorneys' fees here. ..........11

       ii.  A cost-of-living adjustment is appropriate. ...............................................12

Conclusion ...................................................................................................................15

## Introduction

Defendant John Swallow, by and through undersigned counsel, respectfully submits this Application[1] and asks this Court to award him reasonable attorneys' fees under the Equal Access to Justice Act ("EAJA"), in the amount of $91,921.00. Mr. Swallow is the prevailing party under 28 U.S.C. § 2412(d)(1)(A). *Fed. Election Comm'n v. Swallow*, 304 F. Supp. 3d 1113 (D. Utah 2018); Partial Final Judgment, (Sept 20, 2018), ECF No. 127. Furthermore, the position of the Federal Election Commission ("FEC" or "Commission") was not substantially justified. Consequently Mr. Swallow is entitled to reasonable attorneys' fees under the EAJA for the reasons set forth below.

## Argument

### I.     The Equal Access to Justice Act entitles Mr. Swallow to an award of reasonable attorneys' fees from the Federal Election Commission.

The EAJA provides that

> a court *shall award* to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A) (emphasis added). To recover fees, the party must file "an application for fees and other expenses which shows that the party is a prevailing party and is eligible to

---

[1] Counsel for Mr. Swallow conferred with counsel for the Federal Election Commission, and the Commission has indicated that it will oppose this Application.

receive an award under this subsection." 28 U.S.C. § 2412(d)(1)(B).[2] A district court's determination of whether to award fees under the EAJA is reviewed for abuse of discretion. *Pierce v. Underwood*, 487 U.S. 552, 563 (1988) ("the text of the statute permits, and sound judicial administration counsels, deferential review of a district court's decision regarding attorney's fees under the EAJA"); *Hadden v. Bowen*, 851 F.2d 1266, 1268 (10th Cir. 1988) (citing *Pierce* in an action under § 2412(d)).

To recover fees under the EAJA, the applicant must (a) show that he is the prevailing party; (b) allege that the position of the United States was not substantially justified; (c) allege that no special circumstances apply that would make a fee award unjust; (d) show that the prevailing party meets statutory net worth limits; and (e) show that the application is timely filed. *See Scarborough v. Principi*, 541 U.S. 401, 408 (2004) (walking through the elements of 28 U.S.C. § 2412(d)). Taking each in turn, Mr. Swallow qualifies for reasonable attorneys' fees under the EAJA.

### a.   John Swallow is the prevailing party.

To obtain an award of attorneys' fees under the EAJA, Mr. Swallow must demonstrate that he was the prevailing party. "Prevailing party" is "a legal term of art" meaning one "'in whose favor a judgment is rendered . . . [a]lso termed *successful party*.'" *Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603 (2001) (emphasis in original) (quoting Black's Law Dictionary 1145 (7th ed. 1999)). Prevailing party status attaches when there is a

---

[2] The application must include "the amount sought, including an itemized statement from any attorney or expert witness representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed." *Id*. Litigation costs are also available under the EAJA. 28 U.S.C. § 2412(a)(1) (incorporating by reference the list of taxable costs in 28 U.S.C. § 1920). Because Mr. Swallow was a defendant and this case resolved at an early stage on the pleadings, he does not seek taxable costs.

"material alteration of the legal relationship of the parties." *Allen v. Lang*, 736 F. App'x 934, 944 (10th Cir. 2018) (unpublished) (quoting and applying *Buckhannon*, 532 U.S. at 604).

It is clear that John Swallow is the "prevailing party." This Court granted Mr. Swallow's Motion to Dismiss, denied the FEC's Cross-Motion for Judgment on the Pleadings, struck the Commission's *ultra vires* regulation and enjoined its enforcement. *Swallow*, 304 F. Supp. 3d at 1118-19. This Court solidified this material change in the legal relationship when it issued partial final judgment. Partial Final Judgment at 1-2. Mr. Swallow entirely prevailed.

> **b.  The Commission cannot meet its burden to prove substantial justification.**

To recover fees under § 2412(d), the prevailing party must "allege that the position of the United States was not substantially justified." 28 U.S.C. § 2412(d)(1)(B); *Pierce*, 487 U.S. at 564 ("'Substantially justified' is the test the statute prescribes, and the issue should be framed in those terms."). Mr. Swallow so alleges here: the FEC's action was based entirely on an *ultra vires* regulation, contrary to Supreme Court precedent, and based entirely on conclusory allegations in the Amended Complaint. Mr. Swallow not only won his case, this Court's decision is protecting others from the FEC's overreach. The government was not "substantially justified" in this case.

"[C]ourts uniformly have recognized," that this element "must be shouldered by the Government." *Scarborough*, 541 U.S. at 414 (collecting cases). This is true as well in the Tenth Circuit, where "the government bears the burden of showing that its position was substantially justified" under the EAJA. *Hadden*, 851 F.2d at 1267 (citing *Kemp v. Bowen*, 822 F.2d 966, 967 (10th Cir. 1987)). The key, therefore, becomes whether the Commission[3] can prove that its position

---

[3] Under 28 U.S.C. § 2412(d)(2)(C), "'United States' includes any agency and any official of the United States acting in his or her official capacity."

3

was "substantially justified."

The *Pierce* Court examined the meaning of "substantially justified" and held that "the phrase before us here is not 'justified to a high degree,' but rather 'justified in substance or in the main' -- that is, justified to a degree that could satisfy a reasonable person." 487 U.S. at 565. Yet, it must mean "more than merely undeserving of sanctions for frivolousness," for, as the Court observed, merely surviving Rule 11 "is assuredly not the standard for Government litigation of which a reasonable person would approve." *Id*. at 566. The government's position is "substantially justified" if "it has a reasonable basis in law and fact." *Id*. at 566 n.2[4]

In this case, the Commission must prove it was "substantially justified" in both its internal process—writing the challenged regulation and Mr. Swallow's Matter Under Review—and the follow-on litigation in this Court. *Hadden*, 851 F.2d at 1267 ("The term 'position' includes the government's position both in the underlying agency action and during any subsequent litigation."); *id*. (the "government's success or failure on the merits at each level may be evidence of whether its position was substantially justified"). The FEC's actions fail this test at every level.

The Commission wrote 11 C.F.R. § 110.4(b)(1)(iii) based on the on an unpublished, default judgment against a *pro se* defendant in the case *Federal Election Commission v. Rodriguez*.[5] FEC, Explanation and Justification: Affiliated Committees, Transfers, Prohibited Contributions, Annual Contribution Limitations and Earmarked Contributions, 54 Fed. Reg. 34098, 34105 (Aug. 17,

---

[4] In the Tenth Circuit, the "substantially justified" test is an independent determination from the success on the merits. *Hadden*, 851 F.2d at 1267 ("In determining whether the government's position was reasonable, the trial judge must make a separate review of the government's position to determine whether it was substantially justified.") But a "request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).
[5] No. 86-687 Civ-T-10(B), 1988 U.S. Dist. LEXIS 19682 (M.D. Fla. Oct. 28, 1988) (unpublished). The rulemaking cited an earlier decision in that case, dated May 5, 1987. 54 Fed. Reg. at 34105

1989). Aside from the oblique cite to *Rodriguez*, the rulemaking itself lacked further clarification, thought, or evidence. This Court thought such history was a thin basis for the rule. *Swallow*, 304 F. Supp. 3d at 1115 ("Apparently impressed with what the district judge did to a pro se defendant in *Rodriguez*, the Commission felt justified to adopt the new provision.").

To be sure, "it does not necessarily follow from [a court] decision vacating an administrative decision that the government's efforts to defend that decision lacked substantial justification." *Madron v. Astrue*, 646 F.3d 1255, 1257 (10th Cir. 2011) (discussing administrative denial of disability benefits). Similarly, the existence of an arbitrary or capricious rule is not, in itself, sufficient to label the government's case not "substantially justified." *Hadden*, 851 F.2d at 1268.[6] That is because the "'government's position can be [substantially] justified,' . . . 'even though it is not correct.'" *Madron*, 646 F.3d at 1257 ((quoting *Hackett v. Barnhart*, 475 F.3d 1166, 1172 (10th Cir. 2007), brackets in *Madron*). Losing on administrative law grounds, therefore, does not *automatically* lead to a finding of lack of substantial justification. The particular facts matter.

Conversely, choosing to ignore clear Supreme Court precedent indicates the Commission's action was not "substantially justified." This is not a mere review of a ministerial decision or the adoption of a new regulation in an emerging area of law. Instead, the Commission had ample

---

[6] The Tenth Circuit in *Hadden* rejected the legislative history that indicated that "agency action found to be arbitrary and capricious or unsupported by substantial evidence is virtually certain not to have been substantially justified under the" EAJA. *Id.* (quoting H.R. Rep. No. 99-120, 99th Cong., 1st Sess. 9-10). The *Hadden* court's basis for doing so was that the Supreme Court in *Pierce* rejected the prior paragraph of the same House Report because the EAJA 1985 reenactment "simply [did] not indicate that the 1980 statutory test was to be changed to equate the lack of substantial evidence with a lack of substantial justification under the EAJA." *Id.* (applying *Pierce*, 487 U.S. at 556). Since the legislative history was "not contemporaneous with the drafting of the language enacted in 1980" and was "inconsistent with the plain meaning of the statute and [did] not express a clear legislative intent which unequivocally modifies the statutory language," the *Hadden* court did not find the legislative history persuasive. *Id.*

opportunity to walk back the application of its *ultra vires* rule in light of *Central Bank of Denver,*

*N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994). Prior to adding Mr. Swallow

to the case against Mr. Johnson in this Court, the FEC held a hearing, where counsel for

Mr. Swallow informed the Commission of the holding in *Central Bank*:

> I think it's critical that along those lines the Commission, through its staff, look
> carefully at the Supreme Court's decision in the *Central Bank of Denver* case. It's
> a 1994 case, and it involved whether or not the aiding and abetting regulation at the
> Securities and Exchange Commission could be deemed valid law. And the Supreme
> Court emphatically said no; that, in essence, Congress knows how to put aiding and
> abetting enforcement authority in a statute. Congress did not do so. . . . And so it
> seems like it's very strong authority for saying that given that 1994 Supreme Court
> decision the FEC's regulation is, shall we say, extremely in doubt in terms of
> enforceability.

Scott Thomas, Hearing Tr. 6:11 – 7:3, In the Matter of John Swallow, MUR 6850 (Sept. 30, 2015)

(attached as Exhibit A). This information was repeated in writing to the Commission. Request to

Respond to General's Notice, In the Matter of John Swallow, MUR 6850 at 2, ¶ 11(a) (Oct. 22,

2015) (attached as Exhibit B). Despite multiple opportunities to reconsider 11 C.F.R.

§ 110.4(b)(1)(iii) in this enforcement action, the FEC still chose to double-down and pursue a civil

action in this Court based on its regulation. Worse, aside from a mere conclusory recitation of the

factors of the legal claim, the Amended Complaint had no relevant basis in fact.[7]

      After much briefing on the merits of the *Central Bank* argument, this Court agreed that

*Central Bank* controls, and therefore "the government cannot infer secondary liability when the

statute in question is silent on that subject." *Swallow*, 304 F. Supp. 3d at 1118. Since "[t]he FEC's

authority exists no further than the boundaries of the law it was created to enforce," the agency

---

[7] *See*, *e.g.*, Def. John Swallow's Opp. to FEC Cross-Mot. at 15-19 (Jan. 12, 2018), ECF No. 114
(discussing in detail the allegations of the Amended Complaint).

"went too far, exceeding its authority to write regulations and improperly intruding into the realm of lawmaking that is the exclusive province of Congress." *Id.*

This Court rejected the FEC's specious attempt to extend its power. Now sister courts are applying this Court's ruling to protect others who are also brought before district courts on the FEC's *ultra vires* regulation. *E.g.*, Order on Mot. to Dismiss, *Fed. Election Comm'n v. Rivera*, No. 1:17-cv-22643-MGC, slip. op. at 4 (S.D. Fla. Sept. 27, 2018) (unpublished) ("*Swallow* is fatal to the FEC's claim against Rivera.").[8]

The FEC adopted a regulation on the thinnest possible grounds, and without proper notice and comment. *See e.g.*, Mot. to Dismiss, Mot. for J. on the Pleadings, and Mem. in Supp. at 12 (Oct. 23, 2017), ECF No. 98 (discussing the FEC's Explanation and Justification); *id.* at 15 (discussing Notice of Proposed Rulemaking). Even after being made aware of contravening Supreme Court precedent that severely questioned the legitimacy of that rule, it still pursued its claim (on bare, conclusory allegations) against Mr. Swallow. The Commission then lost before this tribunal. This Court's decision not only resolved Mr. Swallow's predicament, it also served to help those similarly hauled before sister district courts. Nothing in this case points to a government action that was "substantially justified."

> **c.   There are no special circumstances in this case that make an award against the Commission unjust.**

If there are "special circumstances [that] make an award unjust," a court may deny

---

[8]   *Available at* https://www.fec.gov/resources/cms-content/documents/rivera_dc_order_mtd.pdf. This is the same *Rivera* case discussed in the briefing concerning Partial Final Judgment. Pl. FEC's Opp. to Def. John Swallow's Mot. for Partial Final J. at 7 n.2 (Aug. 9, 2018), ECF No. 125; Def. John Swallow's Reply Mem. in Supp. of Partial Final J. at 10 (Aug. 23, 2018), ECF No. 126; *id* Exhibit A.

attorneys' fees to the prevailing party. 28 U.S.C. § 2412(d)(1)(A). As with the "substantially justified" element, the government bears the burden of proving "special circumstances" as a defense against fees under the EAJA. *See*, *e.g.*, *Robinson v. Bowen*, 679 F. Supp. 1011, 1016 (D. Kan. 1988); *see also United States v. Jones*, 125 F.3d 1418, 1426 (11th Cir. 1997).

The special circumstances "defense was not intended to be applied across-the-board to an entire class of cases, but rather to prevent the injustice of granting an award in a particular case." *Nat'l Ass'n of Mfrs. v. Dep't of Labor*, 159 F.3d 597, 606 (D.C. Cir. 1998). That is, "Congress intended the 'special circumstances' defense to 'give[] the court discretion to deny awards where equitable considerations dictate an award should not be made.'" *Id.* (quoting H.R. Rep. No. 96-1418 at 11 (86th Cong., Second Sess. 1980)).

Courts narrowly construe the "special circumstances" provision to avoid defeating Congress' purpose in enacting the EAJA. *Martin v. Heckler*, 773 F.2d 1145, 1150 (11th Cir. 1985) (en banc).[9] Congress created the EAJA "to provide financial incentives for persons contesting unreasonable governmental action and to improve citizen access to the courts." *Hadden*, 851 F.2d at 1266 n.1. This case is a prime example of why the EAJA was created: the circumstances are that the government used an *ultra vires* administrative rule to regulate core First Amendment activity.[10]

Here, the government can point to no special circumstance militating against awarding fees

---

[9] Reversed on other grounds by *Texas State Teachers Association v. Garland Independent School District*, 489 U.S. 782, 784 (1989).

[10] Legislative history indicates that if the government was advancing, in good faith, a novel and credible extension or interpretation of law, then that might qualify as a "special circumstance." *See*, *e.g.*, *Wilkett v. Interstate Commerce Comm'n*, 844 F.2d 867, 873 (D.C. Cir. 1988) (discussing H.R. Rep. No. 96-1418 at 11). But even then, "it would be unjust to compel the private party, chosen arbitrarily by the Government, to incur the full cost of reconsidering an established rule." *Id.* (citing *Spencer v. Nat'l Labor Relations Bd.*, 712 F.2d 539, 558-59, 559 n.72 (D.C. Cir. 1983)).

under the EAJA. The Commission ignored the plain language of the statute, intervening Supreme Court precedent in the *Central Bank* case and its progeny, and a total lack of articulable facts to pursue a case against Mr. Swallow. The FEC cannot claim its position in enforcing its *ultra vires* regulation in this action was substantially justified in law or fact, or that there were any special circumstances here that make an award against the government unjust.

### d.  Mr. Swallow met the net-worth requirement of the EAJA.

Eligibility for an award under the EAJA depends upon the applicant's net-worth, which must not have exceeded $2 million "at the time the civil action was filed." 28 U.S.C. § 2412(d)(2)(B)(i) (calculation for natural persons). Mr. Swallow met this requirement when the FEC filed its amended complaint brining him into this case on February 24, 2016. See Exhibit C (Sworn Declaration of John Swallow).

### e.  This Application is timely filed.

Under § 2412(d), Mr. Swallow has thirty days to apply for recovery of fees and costs after "final judgment." 28 U.S.C. § 2412(d)(1)(B). And 28 U.S.C. § 2412(d)(2)(G) defines "final judgment" as "a judgment that is final and not appealable." The Supreme Court has therefore interpreted subsection (d)(2)(G) to mean thirty days *after* the notice of appeal clock has run. *Shalala v. Schaefer*, 509 U.S. 292, 302 (1993) ("An EAJA application may be filed until 30 days after a judgment becomes 'not appealable' -- *i.e.*, 30 days after the time for appeal has ended."); *see also Fed. Election Comm'n v. Political Contributions Data*, 995 F.2d 383, 385 (2d Cir. 1993).

The deadline calculation is straight-forward. This Court granted partial final judgment on September 20, 2018. Swallow Final Judgment at 2. Under Federal Rule of Appellate Procedure 4(a)(1)(B)(ii), any party had up to sixty days from entry of that judgment to file a notice of appeal.

Sixty days from the issuance of final judgment was November 20, 2018. This Motion for fees under the EAJA was therefore due no later than December 20, 2018. Mr. Swallow's application for fees is therefore timely filed.

## II.   Mr. Swallow requests reasonable attorneys' fees.

Having established eligibility for reasonable attorneys' fees under the EAJA, Mr. Swallow now turns to the calculation of those fees. As discussed below, the reported billable hours of Mr. Swallow's attorneys are reasonable. Once the hours are tallied, multiplying by the appropriate rate will yield reasonable attorneys' fees. Mr. Swallow takes each issue—the number of hours and calculating the rate—in turn. A district court's determination of the amount of allowable attorneys' fees is reviewed by appellate courts on an "abuse-of-discretion standard." *Pierce*, 487 U.S. at 571 (collecting cases).

### a.   The reported hours of Mr. Swallow's attorneys are reasonable.

A claim for attorneys' fee and recoverable expenses under the EAJA must include a statement indicating the actual time expended. The "'starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation.'" *Ramos v. Lamm*, 713 F.2d 546, 552 (10th Cir. 1983) (quoting *Hensley*, 461 U.S. at 433).[11] Counsel for "[t]he prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998) (internal citations omitted). Exercising such billing judgment, attached to this application are the declarations of the supervising attorneys for each firm.

---

[11] *Ramos* was overruled on other grounds by *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 717 n.4 (1987).

Mr. Dickerson details the hours worked for the Institute for Free Speech attorneys, totaling 380.0 hours. *See* Exhibit D. Mr. Thomas details the hours worked by attorneys at Blank Rome, LLP, totaling 5.4 hours. *See* Exhibit E. Mr. Williams details the hours worked by attorneys at Scott C. Williams, LLC, totaling 67.4 hours. *See* Exhibit F. Mr. Swallow uses these hours, as detailed in the various declarations, for the basis of the fee calculations. This leaves resolution on which rate to use in calculating the fees based upon these reported hours.

### b. The increase in the cost of living yields a lodestar that his higher than the standard $125 per hour rate under the EAJA.

Congress set a statutory cap on fees at a rate of $125 per hour "*unless* the court determines that an increase in the cost of living or a special factor . . . justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A) (emphasis added). For the reasons and data set forth below, the cost of living—both in Washington, D.C., and in Salt Lake City—gives a basis for adjusting the statutory rate.

### i. The statutory rate provides the minimum for attorneys' fees here.

This Court must engage in a two-step analysis in determining attorneys' fees: first it must determine the prevailing market rates, and second, if the prevailing market rate is higher than $125, consider an upward adjustment for an increased cost of living. *Pierce*, 487 U.S. at 571-72. The EAJA provides:

> The amount of fees awarded under this subsection s*hall be based upon prevailing market rates . . . except that* . . . (ii) attorney fees shall not be awarded in excess of $ 125 per hour unless the court determines that an increase in the cost of living . . . justifies a higher fee.

28 U.S.C. § 2412(d)(2)(A)(ii) (emphasis added). Applying the market rates of the District of Utah, it becomes apparent that the EAJA's $125 per hour is the minimum rate justice would require in this case. Quite simply, the EAJA cap is lower than what legal services cost in Utah.

Per the text of the statute, if the market rates are lower than the statutory cap, then the market rate controls. But "[m]arket rates for legal services being what they are," such hourly rates "will exceed the EAJA's $ [125] cap in many cases." *Jean v. Nelson*, 863 F.2d 759, 773 (11th Cir. 1988). This is such an instance. While a higher market rate "alone does not authorize a court to make an upward adjustment in hourly rates" under the EAJA, *id.*, it does show that the Court should take the EAJA number as the lower limit.

This Court sits in Utah, with the courthouse in Salt Lake City. 28 U.S.C. § 125(2). In an analysis from the autumn of last year, the Utah State Bar found that the "most popular rate category, by far, [was] $151–200 per hour, with 47% of attorneys reporting their rates in this range." David McNeill, *Measuring the Legal Services Market in Utah*, Utah Bar Journal 22, 26 (Vol. 30, No. 5 Sept./Oct. 2017).[12] The local legal market exceeds the EAJA's statutory fee cap.

With such data and the Court's own experience,[13] this Court can find that the EAJA's $125 per hour cap is below what lawyers in the area charge their clients. Using the statutory cap will result in quite the bargain for the Commission. But, unsurprisingly, Mr. Swallow believes the cost-of-living is a special factor to increase the rate, for the reasons discussed below.

### ii.   A cost-of-living adjustment is appropriate.

An upward adjustment based on the cost-of-living increases is appropriate and is allowed by the statutory text itself. 28 U.S.C. § 2412(d)(2)(A). "Because the statutory cap was set years

---

[12] *Available at* http://www.utahbar.org/wp-content/uploads/2017/11/Sep_Oct_2017_FINAL.pdf. Only six percent of Utah attorneys in the survey charged less than $150 per hour. *Id.*

[13] *See*, *e.g.*, *Mencia v. Allred*, No. 2:11-cv-200, 2017 U.S. Dist. LEXIS 166318, at *11 (D. Utah Oct. 6, 2017) (unpublished) (determining attorneys' fees under the Fair Labor Standards Act "[b]ased on the court's own familiarity with the prevailing market rates for legal work in this community" along with the affidavits and qualifications of the attorneys in the case).

ago, in 1996, courts routinely approve cost-of-living adjustments." *Carey v. Fed. Election Comm'n*, 864 F. Supp. 2d 57, 64 (D.D.C. 2012); *cf. Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 969 (D.C. Cir. 2004) (collecting cases of such adjustments).

Courts measure the cost-of-living adjustment by the change in the United States Bureau of Labor Statistics' Consumer Price Index for Urban Consumers ("CPI-U") using the relevant regional category. *See, e.g., Ramon-Sepulveda v. Imm. & Nat. Serv.*, 863 F.2d 1458, 1463 (9th Cir. 1988); *United States v. Undetermined Quantities of Article of Device*, 797 F. Supp. 861, 865 (D. Colo. 1992) ("use of the CPI-U is more in line with the case law and congressional intent").

For the dates of comparison in the calculation, Mr. Swallow uses March 1996 as the date that the EAJA's cap was last updated. Contract with America Advancement Act of 1996, Pub. L. 104-121 Title II(c) § 232(b)(1), 110 Stat. 847, 863 (Mar. 29, 1996).

Calculating the "current" date is somewhat less clear. The Tenth Circuit has not spoken to the issue. The majority of the United States Courts of Appeals that have addressed the issue hold that the period when services were performed is the proper time to use for calculating the cost-of-living adjustments. *See, e.g. Masonry Masters v. Nelson*, 105 F.3d 708, 711 (D.C. Cir. 1997); *cf. Sorenson v. Mink*, 239 F.3d 1140, 1149 (9th Cir. 2001) (collecting cases from the Second, Fifth, Seventh, and Federal Circuits applying same rule).[14] Sister district courts in this Circuit applied the *Masonry Masters* opinion and its "current date" rule. *See, e.g., Martin v. Colvin*, 198 F. Supp. 3d 1248, 1254 (D. Kan. 2016). For simplicity, Mr. Swallow takes as the "current date" November

---

[14] The Third Circuit held that the date on which "prevailing party" status attached was the "current date" for the calculation. *See, e.g., Garcia v. Schweiker*, 829 F.2d 396, 402 (3d Cir. 1987).

2017, as that was in the middle of the merits briefing on his successful Motion.[15]

**Washington, D.C.:** The CPI-U is calculated bimonthly for the Washington, D.C. area. The November 2017 CPI-U was 257.872.[16] The March 1996 number for Washington, D.C. was 158.4.[17] So, dividing November 2017 by March 1996, the result is a coefficient of 1.63. Multiplying the cost-of-living coefficient by the EAJA rate (1.63 x $125), the adjusted rate of $203.75 applies to the attorneys in the Washington, D.C. metropolitan area.

**Salt Lake City:** Looking at the CPI-U for Western Cities, the November 2017 rate was 257.126.[18] In March 1996, it was 161.4.[19] So, dividing November 2017 by March 1996, the result is a Salt Lake City, Utah, coefficient of 1.59. Multiplying the cost-of-living coefficient by the EAJA rate (1.59 x $125), the adjusted rate of $198.75 applies to the attorneys in Salt Lake City.

Using this data, the calculations for attorneys' fees is a matter of arithmetic:

| Firm | Fee calculation (as adjusted) | Total |
|------|------------------------------|-------|
| Institute for Free Speech | 380.0 hours x $203.75 = | $77,425.00 |
| Blank Rome, LLP | 5.4 hours x $203.75 = | $1,100.25 |
| Scott C. Williams, LLC | 67.4 hours x $198.75= | $13,395.75 |

---

[15] The variance in calculation between the drafting of the Motion prior October 2017 and the final merits brief in January 2018 is negligible. See data in tables in the cites in the footnotes below.

[16] Bureau of Labor Statistics, Consumer Price Index Historical Tables for Washington-Arlington-Alexandria, DC-MD-VA-WV *available at* https://www.bls.gov/regions/mid-atlantic/data/consumerpriceindexhistorical_washingtondc_table.htm.

[17] Bureau of Labor Statistics, Table 3, Washington, DC-MD-VA, *available at* https://www.bls.gov/news.release/history/cpi_041296.txt.

[18] Bureau of Labor Statistics, News Release Consumer Price Index, West Region – December 2017 at 6 Table 1 (Jan. 12, 2018) *available at* https://www.bls.gov/regions/west/news-release/2018/pdf/consumerpriceindex_west_20180112.pdf.

[19] Bureau of Labor Statistics, Table 3, West Urban, *available at* https://www.bls.gov/news.release/history/cpi_041296.txt.

14

| | Grand Total: | $91,921.00 |
|---|---|---|

### Conclusion

For the foregoing reasons, Mr. Swallow respectfully requests this Court grant his

Application for Attorneys' Fees against the Federal Election Commission pursuant to the Equal

Access to Justice Act for the total amount of $91,921.00.

Respectfully submitted,

/s/ Allen Dickerson

| | |
|---|---|
| Scott C. Williams (Utah Bar. No. 6687) | Allen Dickerson (*pro hac vice*) |
| SCOTT C. WILLIAMS, LLC | Tyler Martinez (*pro hac vice*) |
| 43 East 400 South | Owen Yeates (Utah Bar No. 13901) |
| Salt Lake City, Utah 84111 | INSTITUTE FOR FREE SPEECH |
| Telephone: 801.220.0700 | 124 S. West Street, Suite 201 |
| Facsimile: 801.364.3232 | Alexandria, Virginia 22314 |
| scwlegal@gmail.com | Telephone: 703.894.6800 |
| | Facsimile: 703.894.6811 |
| Scott E. Thomas (*pro hac vice*) | adickerson@ifs.org |
| BLANK ROME, LLP | tmartinez@ifs.org |
| 1825 Eye Street N.W. | oyeates@ifs.org |
| Washington, D.C. 20006 | |
| Telephone: 202.420.2601 | |
| Facsimile: 202.420.2201 | |
| sthomas@blankrome.com | |

*Counsel for Defendant John Swallow*

Dated: December 18, 2018

15